# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: MAY 1 2 2014

DAJIA DAVENPORT, on behalf of herself
and all others similarly situated,

                  Plaintiff,

v.

ELITE MODEL MANAGEMENT
CORPORATION,

                  Defendant.

1:13-cv-01061-AJN

## ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT, AND RELATED RELIEF

The above-entitled matter came before the Court on Plaintiffs' Motion for Final Approval

of Class Action Settlement, and Related Relief. Pursuant to the terms of the Parties' settlement

agreement, Defendant did not oppose the motion.

Plaintiff Dajia Davenport and Opt-In Plaintiffs Annie Byun, Stacey Robinson, Polina

Mosendz, and Elizabeth Defeo (together, "Plaintiffs") are individuals who served as unpaid

interns with Defendant Elite Model Management Corporation ("Elite" or "Defendant") (together

with Plaintiffs, the "Parties"). On February 15, 2013 Plaintiff Dajia Davenport commenced this

action as a proposed class action under Federal Rule of Civil Procedure 23 and as a proposed

collective action under 29 U.S.C. § 216(b). Specifically, Ms. Davenport alleges that Elite

misclassified her as a trainee exempt from the New York Labor Law ("NYLL") and the Fair

Labor Standards Act ("FLSA"), and thereby failed to compensate her for the hours she spent

interning at Elite. The initial Complaint sought recovery of wages, liquidated damages, interest,

an order enjoining Elite's alleged practice of misclassifying its interns, and attorneys' fees and

1

costs. Plaintiffs subsequently filed two amended complaints, such that the Second Amended Complaint is the operative pleading in the litigation. Defendant filed its Answer and Affirmative Defenses, denying liability on any of the claims in the Second Amended Complaint.

After four additional former interns opted-in to the proposed FLSA collective, the filing of two amended complaints, Plaintiffs' motion for conditional certification, Elite's answer in which it denied the claims and allegations and asserted various affirmative defenses, and the exchange of written discovery requests, the Parties agreed to attempt to resolve the case through mediation. Decl. of Steven L. Wittels in Supp. of Pls.' Mot. for Final Approval of Class Action Settlement, and Related Relief ("Wittels Decl.") ¶¶ 13-19.

Prior to and in connection with the mediation, the Parties exchanged informal discovery pursuant to a confidentiality agreement to enable the Parties to evaluate the strength and weaknesses of Plaintiffs' claims and reasonably estimate total potential damages. *Id.* ¶ 18. In connection with the mediation, Elite produced nearly 4,000 pages of confidential documents, including internship descriptions, intern resumes, emails revealing Elite's process for granting internships, emails related to the interns' daily activities, data showing the number of interns, location of internships, intern schedules, and information concerning the reimbursement of business expenses incurred by interns. *Id.* Using the documents Elite produced and the Parties' prior and subsequent research and investigation, the Parties prepared and submitted comprehensive confidential mediation briefs. *Id.*

As a result of the Parties' informal discovery and extensive and vigorous negotiations prior to and during the mediation, the Parties reached an agreement in principle to settle the case for a total of $450,000, as well as agreement in principle on various other key terms. The Parties reached this settlement after a fourteen-plus-hour mediation under the supervision of an

experienced employment law mediator, Alfred Feliu, Esq. *Id.* ¶ 19. During the several weeks after the mediation, the Parties continued to negotiate various terms of the settlement with the assistance of mediator Feliu. The negotiated terms were ultimately memorialized in a formal settlement agreement ("Settlement Agreement"), fully executed by the Parties on December 19, 2013. *Id.*

On January 9, 2014, this Court entered an Order preliminarily approving the settlement, conditionally certifying the settlement classes, appointing Wittels Law, P.C. as Class Counsel, and authorizing notice to all Class Members (the "Preliminary Approval Order"). Dkt. No. 46. On February 18, 2012, the Court-appointed claims administrator mailed and emailed Court-approved notices (as applicable, either the "NYLL Notice" and the "FLSA Notice," together the "Notices") to all Class Members informing them of, *inter alia*, their rights under the settlement, including the right to object to the settlement; the right to opt out to the settlement for Class Members who brought claims under New York law, which are subject to Rule 23; the right to "opt in" to the FLSA Class; Plaintiffs' request for payment of service awards in the total amount of $20,000 to distributed among the named Plaintiff and the four Opt-In Plaintiffs; and Class Counsel's intention to seek up to $143,500 (31.8% the total settlement amount) for attorneys' fees and reimbursement of their out-of-pocket expenses. Wittels Dec. ¶ 31, n.1; *id.* Ex. B (Tilghman Decl.), Ex. A (Notice and Claim Form). Based on the few Notices that were returned as undeliverable for which the Claims Administrator was unable to obtain a more current mailing or email address, Notice is presumed to have reached 145 of the 155 potential Class Members. Wittels Decl. ¶ 31. On March 31, 2014, the Claims Administrator sent a reminder email to the Class Members who had not yet filed Claim Form and for whom the Claims Administrator had a valid email address. *Id.* The reminder email was approved by the attorneys for the Parties, and

was intended to remind Class Members that the deadline for submitting a claim or opting out was April 19, 2014, as stated in the Notice. *Id.* In addition, nine potential Class Members were re-mailed notice and consequently had until April 29, 2014 (8 potential Class Members) and May 9, 2014 (1 potential Class Member) to respond. Following the expiration of all potential Class Members' time to respond to the Notices, 55 potential Class members had submitted Claim Forms, and none had submitted objections or requested exclusion from the settlement. *See* Tilghman Supp. Decl. ¶ 4.

On April 24, 2014, Plaintiffs filed a Motion for Final Approval seeking final certification of the NYLL Class under Federal Rule of Civil Procedure 23 for settlement purposes only; final approval of all terms applicable to the NYLL Class set forth in the Settlement Agreement; approval of all terms applicable to the FLSA Class set forth in the Settlement Agreement, including finding for purposes of settlement only that the FLSA Class Members are "similarly situated" under Section 216(b) of the Fair Labor Standards Act ("FLSA"); approval of the distribution of the Notices as the best notice practicable under the circumstances; approval of Plaintiffs' request for service awards, approval of Class Counsel's request for fees and litigation expenses; approval of the Parties' proposed final settlement procedure; incorporation of all terms of the Settlement Agreement, including the release and covenant not to sue; dismissal of the action with prejudice; and the entering of final judgment. Pursuant to the terms of the Parties' settlement agreement, Elite did not oppose the motion.

The Court held a fairness hearing on May 1, 2014. No Class Member objected to the settlement, either prior to or at the hearing, and the Court received no objections prior to the expiration of the final re-mailed Class Members' time to respond.

Having considered the Motion for Final Approval, the supporting declarations, the oral

argument presented at the May 1, 2014, fairness hearing, and the complete record in this matter, for the reasons set forth herein and stated on the record at the May 1, 2014, fairness hearing, and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

<u>**CERTIFICATION OF THE "NYLL CLASS" PURSUANT TO RULE 23**</u>

1.      The Court certifies the following class under Federal Rule of Civil Procedure 23(e), for settlement purposes only, and with no other effect on this litigation (the "NYLL Class"):

> All individuals who served as unpaid interns for Elite Model Management Corporation or any subsidiary of Elite in New York from February 15, 2007 through January 9, 2014.

2.      As stated in the Court's January 9, 2014 Order granting preliminary approval, Plaintiffs meet the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. *See* Dkt. No. 46, at 5 (finding that "Plaintiffs meet all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3)."). That is, Plaintiffs have satisfied "all four requirements of Rule 23(a)," *i.e.*, numerosity, commonality, typicality, and adequacy, as well as the predominance and superiority requirements set forth in Rule 23(b)(3). *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 179 (S.D.N.Y. 2005).

A. Numerosity

3.      The approximately 123 class members are sufficient to satisfy the requirement of numerosity set forth in Rule 23(a)(1), which is "generally satisf[ied]" by numbers in excess of forty. *Fogarazzo*, 232 F.R.D. at 179 (citing *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992)); *see also Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 333 (S.D.N.Y. 2009) (finding numerosity requirement satisfied where proposed NYLL class comprised between

67 and 80 employees).

B. Commonality

4.    Commonality requires "a common question of law or fact to unite the potential plaintiffs in the class." *Dornberger v. Met. Life Ins. Co.*, 182 F.R.D. 72, 77 (S.D.N.Y. 1998). In this case, the requirement of commonality is satisfied by common questions of law and fact including: (1) the central claim that potential Class Members were all misclassified as "trainees" during the relevant period; (2) the content of Defendant's internship program; (3) the allegation that Defendant failed to maintain accurate time records of their work; and (4) whether Defendant acted willfully or recklessly in disregard of the law. *See* Dkt. No. 43, at 19 (Mem. in Support of Mot. for Prelim. Approval).

5.    In concluding that the requirement of commonality is met for purposes of *settlement*, the Court does not consider the potential "manageability concerns posed by numerous individual questions" regarding each Class Member's proper classification as an employee or trainee. *In re American Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012). While these questions are certainly relevant to the certification of a class for *litigation, see, e.g., Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 535-36 (S.D.N.Y. 2013) (finding that commonality requirement met by "common questions" relevant to the "trainee determination" and "classwide evidence that interns provided an immediate advantage to Defendants"); *Wang v. Hearst Corp.*, 293 F.R.D. 489, 495-96 (S.D.N.Y. 2013) (finding that intern class could not prove commonality for purposes of litigation because "liability question" would turn on individualized assessments of "what the interns did and what benefits they received during their internship"), such trial "management problems" are not relevant for purposes of certification of a class for *settlement*, "for the proposal is that there be no trial," *Anchem Prods, Inc. v. Windsor*, 521 U.S.

591, 620 (1997). *See, e.g., In re AIG*, 689 F.3d 229 (vacating district court's denial of certification of settlement class on manageability grounds).

6.       The Court's conclusion in this regard is bolstered by the absence of any apparent conflict of interest among the Class Members, or other risk that failure to enforce the requirement of commonality rigorously would result in "unwarranted or overbroad class definitions." *Cf. Anchem*, 620 U.S. at 597, 624-26 (finding that commonality was not met where "class proposed for certification potentially encompasse[d] hundreds of thousands, perhaps millions, of individuals" and "the interests of those within the single class [were] not aligned").

C. Typicality

7.       "Typicality 'requires that the claims of the class representative[] be typical of those of the class, and 'is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Glatt*, 293 F.R.D. at 537 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)). Here, the requirement of typicality is satisfied by Plaintiffs' allegations "that the same unlawful conduct was directed at or affected both [them] and the class sought to be represented." *Id.* (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)) (finding typicality requirement satisfied where named plaintiff worked in the same internship program as class members, notwithstanding that she did not receive academic credit and was not recruited by the same person). In particular, Plaintiffs have alleged that they, like the class they seek to represent, were wrongfully misclassified as "trainees" and consequently unpaid for their work for the Defendant.

D. Adequacy

8.       The fourth and final requirement set forth in Rule 23(a) goes to the adequacy of

the proposed class representative and their retained counsel. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Accordingly, "[a]dequacy requires determining whether '1) plaintiff[s'] interests are antagonistic to the interest of other members of the class and 2) plaintiff[s'] attorneys are qualified, experienced, and able to conduct the litigation.'" *Glatt*, 293 F.R.D. at 537 (quoting *Baffa*, 222 F.3d at 60)." In this case, both prongs are met, and the requirement of adequacy is satisfied.

9.      First, Plaintiffs are alleged to have no "interests that are antagonistic to or at odds with those of the Class Members," and have, furthermore, "contributed significant time and effort to the case by holding numerous meetings and telephone conferences with Class Counsel, providing Class Counsel with detailed factual information regarding the interns' job duties, assisted with the preparation and review of the complaint, and supported Class Counsel in the mediation." Dkt. No. 43, at 21-22 (Mem. in Support of Prelim. Approval).

10.      Second, the proposed class is represented by experienced Lead Counsel in the form of Wittels Law, which "ha[s] extensive experience in successfully prosecuting wage and hour class actions." Dkt. No. 43, at 22 (Mem. in Support of Prelim. Approval).

E. Predominance

11.      The requirement of predominance set forth in Rule 23(b)(3) is similar to, though "tougher" than, the requirement of commonality, and demands that the common "question or questions predominate over those issues unique to individual plaintiffs." *Dornberger*, 182 F.R.D. at 77 (citing *Marisol A.*, 126 F.3d at 376; *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968)). Here, the Court finds that the questions of law and fact that satisfied the commonality requirement—*i.e.*, (1) the central claim that the potential Class Members were all misclassified as "trainees" during the relevant period; (2) the content of Defendant's internship program; (3)

the allegation that Defendant failed to maintain accurate time records of their work; and (4) whether Defendant acted willfully or recklessly in disregard of the law, *see* Dkt. No. 43, at 19 (Mem. in Support of Mot. for Prelim. Approval)—sufficiently predominate over issues unique to the individual plaintiffs to satisfy this requirement. *Cf. Sullivan v. D.B. Invs., Inc.*, 667 F.3d 273, 338 (3d Cir. 2012) (Scirica, J., concurring) (finding predominance requirement satisfied for purposes of settlement where all of plaintiffs' "claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion").

12. As in the commonality context, the Court reaches this conclusion without considering the "manageability concerns posed by numerous individual questions" as to each Class Member's proper classification as an employee or trainee, *In re AIG*, 689 F.3d at 241, which are irrelevant in this case because "the proposal is that there be no trial," *Anchem*, 521 U.S. at 620.

F. Superiority

13. Rule 23(b)(3) further requires plaintiffs to demonstrate the superiority of class action to individual litigation. Class adjudication is superior where individual claims would burden the judiciary, result in inefficiency, and yield inconsistent results. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 473-74 (S.D.N.Y. 2013).

14. In this case, the requirement of superiority is satisfied because the class action method will "achieve economies of scale for putative Class Members" and "avoid[] the waste and delay of repetitive proceedings." Dkt. No. 43, at 24-25 (Mem. in Support of Prelim. Approval). Moreover, there do not appear to be any other pending suits related to the same underlying conduct, and the bulk of the wrongful conduct occurred in the Southern District of New York. *See id.*

## APPROVAL OF THE NYLL CLASS SETTLEMENT

15.     "A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and not a product of collusion.'" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). This entails a review of both procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citing *Malchman v. Davis*, 706 F.2d 425, 433 (2d Cir. 1983)). In conducting this review, the Court should be mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* at 117 (quoting 4 Newberg § 11:41, at 87). Nonetheless, when considering whether to approve a class action settlement, a district court must "carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness, and that it was not a product of collusion." *D'Amato*, 236 F.3d at 85 (citation omitted).

A.  Procedural Fairness

16.     With respect to procedural fairness, a proposed settlement is presumed to be fair, reasonable, and adequate if it is the result of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores*, 396 F.3d at 116). The involvement of a mediator in negotiations also weighs in favor of a finding of procedural fairness. *See Aponte v. Comprehensive Health Mgmt.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at * 3 (S.D.N.Y. Apr. 2, 2013) ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement achieved meets the requirements of due process.") (citations omitted).

17. The Court finds that the negotiating process that resulted in the proposed settlement was procedurally fair because the settlement was reached through arm's-length negotiations supervised by an experienced mediator, after experienced counsel had evaluated the merits of Plaintiffs' claims, and is untainted by collusion.

B. Substantive Fairness

18. Having considered the factors set forth by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), the Court also concludes that the proposed settlement is substantively fair. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 462-63. These factors are not to be applied in a rigid, formalistic manner. Rather, "[t]he evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Id.* at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)).

**1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1).**

19. The first *Grinnell* factor prompts courts to weigh the benefits of the potential settlement against the time and expense of continued litigation. *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949, at *6 (S.D.N.Y. Sept. 10, 2013) (citing *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002)). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems

associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (citing *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998)).

20.     This case is no exception: with approximately 155 Class Members and claims under federal and state law, litigation through trial would be complex.  This case is further complicated by the unsettled status of internship class actions.  *Compare Wang*, 293 F.R.D. 489 (denying certification of intern class for inability to satisfy commonality requirement); *with Glatt*, 293 F.R.D. 516 (finding that interns were employees covered by FLSA and certifying intern class).  These issues are currently on appeal to the Second Circuit.  *See Wang v. Hearst Corp.*, No. 12 Civ. 793 (HB), 2013 WL 3326650 (S.D.N.Y. June 27, 2014) (granting motion for interlocutory appeal of order denying certification of intern class); *Glatt v. Fox Searchlight Pictures*, No. 11 Civ. 6784 (WHP), 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) (granting motion for interlocutory appeal of order granting certification of intern class).  By reaching a favorable settlement prior to dispositive motions or trial, the Parties have avoided significant expense and delay, and instead made available monetary relief to Class Members in an efficient manner that avoids the risks inherent in misclassification class actions generally, and internship class actions particularly.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

### 2.    The Class' Reaction to the Settlement Has Been Positive (*Grinnell* Factor 2).

21.     Class Members have shown a favorable response to the settlement.  Since the Court-approved Notices explaining the Settlement Agreement and the rights to opt out of or object to the settlement were disseminated, no Class Member has objected to the Settlement, no NYLL Class Members have opted out, and approximately 40% have submitted timely claim forms.  Tilghman Supp. Decl. ¶¶ 4-5.  The level of participation and lack of objections

"demonstrate[] that the class approves of the settlement and supports final approval." *Beckman*, 293 F.R.D. at 475; *see also Velez v. Novartis Pharmaceuticals Corp.*, No. 04 Civ. 09194 (CM), 2010 WL 4877852, at *13 (S.D.N.Y. Nov. 30, 2010) ("In fact, the lack of objections may well evidence the fairness of the settlement.") (quoting *Maley*, 186 F. Supp. 2d at 363); *Wal-Mart Stores*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement") (citations omitted).

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).

22.     The question raised by the third *Grinnell* factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Tiro*, 2013 WL 4830949, at *7 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). While the parties need not have engaged in "extensive pre-trial discovery" prior to obtaining final approval, *Plummer v. Chem. Bank*, 668 F.2d 654, 660 (2d Cir.1982), a sufficient factual investigation must have been conducted to afford the opportunity to "'intelligently [] make . . . an appraisal' of the Settlement," *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 176 (quoting *Plummer*, 668 F.2d at 660). In addition, "[t]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y.1998)).

23.     The Parties' discovery meets this standard and favors final approval. While litigating this case through trial would require hundreds of hours of discovery for both sides, the informal discovery completed by the Parties, as well as the fourteen-plus-hour long mediation, has allowed them to recommend settlement with an adequate appreciation of the strengths and weaknesses of their cases. *See, e.g., Beckman*, 293 F.R.D. at 475 (granting final approval where

parties reached pre-suit settlement and engaged in "an efficient, informal exchange of information" only); *Matheson v. T-Bone Restaurant, LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011) (finding that an efficient, informal exchange of information, and participation in a day-long mediation sufficiently allowed the parties to weigh the strengths and weaknesses of their claims to support settlement). Accordingly, the Court finds that this factor supports settlement.

### 4. **Plaintiffs Face Real Risks if the Case Proceeds (*Grinnell* Factors 4 and 5).**

24. In evaluating the risks of establishing liability, courts "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008) (citation omitted). The law recognizes that, regardless of the perceived strength of a plaintiff's case, liability is "no sure thing," *Wal-Mart Stores*, 396 F.3d at 118, and "[l]itigation inherently involves risks," *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620 (S.D.N.Y. 2012) (quoting *In re Painewebber P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)).

25. Although Plaintiffs believe their case is strong, it is subject to considerable risk. First, there is no guarantee Plaintiffs will be able to proceed on their misclassification theory, or that this case will lend itself to class certification, as two internship class actions in this District that preceded this action have had the misclassification and class certification questions certified for immediate appeal to the Second Circuit. *See Wang*, 2013 WL 3326650 (granting motion for interlocutory appeal of order denying certification of intern class); *Glatt*, 2013 WL 5405696 (granting motion for interlocutory appeal of order granting certification of intern class). The Second Circuit has accepted those appeals. In addition, Plaintiffs' success would require significant favorable factual development and favorable outcomes at trial and on appeal, all three

of which are inherently uncertain and lengthy. While Plaintiffs believe that they can ultimately establish Elite's liability, Class Counsel is experienced and understands that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process pose meaningful risks in terms of outcome and duration. The proposed settlement alleviates these uncertainties, which weighs in favor of final approval.

### 5. Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).

26.     The level of risk involved in obtaining class certification and maintaining it through trial are also significant in this case. As noted above, the Second Circuit has recently determined to weigh in on whether unpaid internship cases may be maintained as class actions, and what standard to apply to the merits of such claims. Accordingly, the Parties anticipate that a determination as to the suitability of a class action would be reached only after the Second Circuit's decisions in the *Wang* and *Glatt* cases, and then only after further discovery and briefing. The fact that the settlement eliminates these complications favors final approval.

### 6. Defendant's Ability to Withstand a Greater Judgment is Not Dispositive (*Grinnell* Factor 7).

27.     Even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Beckman*, 293 F.R.D. at 476 (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005)). Thus, this factor is neutral and does not preclude the Court from granting final approval.

### 7. The Settlement Amount is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9).

28.     The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead,

'there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972)). Indeed, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n. 2. "[T]he question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces." *In re Citigroup Inc. Secs. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013) (finding $590 million settlement fair and reasonable in light of uncertainties and risks, where "best possible recovery" was estimated at $6.3 billion).

29.     The $450,000 proposed settlement provides substantial compensation for Elite's interns. Class Members who submitted a claim form will receive a payment based upon the number of weeks for which they reported that they interned during the relevant limitations periods, with each receiving a minimum settlement payment of $700.64 and a maximum payment of $1,751.61. Wittels Decl., Ex. A (Settlement Agreement) § 70. This settlement amount represents a substantial value given the attendant risks of litigation, notwithstanding that recovery could be greater if Plaintiffs' succeeded on all claims at trial and appeal. The eighth and ninth *Grinnell* factors weigh in favor of final approval.

30.     Having determined that the *Grinnell* factors support settlement, Court hereby grants Plaintiffs' Motion for Final Approval and finally approves all terms applicable to NYLL Class set forth in the Settlement Agreement.

**APPROVAL OF THE FLSA SETTLEMENT**

31.     The standard for approving an FLSA settlement is significantly lower than for a

Rule 23 settlement because "FLSA collective actions do not implicate the same due process concerns as a Rule 23 actions." *Beckman*, 293 F.R.D. at 476 (citing *McKenna Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984); *Reyes v. Altamarea Group, LLC*, No. 10 Civ. 6451 (RLE), 2011 WL 4599822, at *6 (S.D.N.Y. Aug. 16, 2011)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982)). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Id.* (citations omitted).

32.    The Court finds that this settlement is the compromise of a disputed claim. As discussed above, the instant settlement was the result of contested litigation and vigorous arm's-length negotiation. The Parties were represented by counsel experienced in wage and hour law, exchanged sufficient informal discovery to assess the merits of their cases, and chose to settle this matter in light of the risks associated with further litigation.

33.    The Court hereby approves all terms applicable to FLSA Class set forth in the Settlement Agreement. For purposes of this settlement only, the FLSA Class is defined as:

> All individuals, other than members of the NYLL Class, who served as unpaid interns for Elite or any subsidiary of Elite in the United States between February 15, 2010 and January 9, 2014.

**DISSEMINATION OF NOTICE**

34.    In accordance with the Preliminary Approval Order, the NYLL Notice and FLSA Notices, as applicable, were sent by first-class mail and email on February 18, 2014, to each respective Class Member at his or her last known address (with re-mailing and emailing of returned Notices for which new addresses could be located). Wittels Decl. ¶ 31. In addition, a March 31, 2014, reminder email was sent to the Class Members who had not yet filed a Claim Form reminding them that the deadline for submitting a Claim Form or opting out was

approaching. Wittels Decl. ¶ 31. Further, the Parties assisted the claims administrator in responding to Class Member inquiries about the settlement and resolving issues related to improperly filed claim forms. Wittels Decl. ¶ 32.

35.     The Court finds that the NYLL and FLSA Notices fairly and adequately advised Class Members of the terms of the settlement, their right to object to the settlement, as well as the right of NYLL Class Members to opt out of the settlement and the right of the FLSA Class Members to "opt in" to the settlement, and to appear at the fairness hearing conducted on May 1, 2014. Class Members were provided with the best notice practicable under the circumstances. The Court further finds that the Notices and their distribution comported with all constitutional requirements, including those of due process, and all requirements of the Federal Rules of Civil Procedure, and any other applicable laws or rules. The Court confirms Tilghman & Co., P.C. as the claims administrator.

## AWARD OF SERVICE FEES TO PLAINTIFFS

36.     Courts acknowledge that "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Beckman*, 293 F.R.D. at 483 (citing *Reyes*, 2011 WL 4599822, at *9). Such "[service] awards are particularly appropriate in the employment context," where "the plaintiff is often a former or current employee of the defendant, and thus … [she] has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Tiro*, 2013 WL 4830949, at *11 (alterations in original); *see also Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548 (RLE), 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to

adverse actions by their employer" and "being blacklisted as 'problem' employees.").

37.     The Settlement Agreement in this case provides service awards totaling $20,000, divided among the Plaintiffs as follows: Dajia Davenport—$5,000; Polina Mosendz—$3,500; Stacey Robinson—$3,500; Annie Byun—$4,750; Elizabeth Defeo—$3,250.  Pursuant to the terms of the Parties' Settlement Agreement, Elite does not oppose a motion for approval of such service awards.  Wittels Decl., Ex. A (Settlement Agreement) § 59.

38.     Plaintiffs here provided significant services to the Class and undertook what they believed to be significant risks in bringing this case.  Plaintiffs informed Class Counsel of the facts initially, and, as the case progressed, provided counsel with relevant documents in their possession, participated in multiple interviews with Class Counsel, reviewed litigation documents, prepared declarations, evaluated and rejected Elite's Rule 68 offers of judgment in order to continue to pursue the claims of absent Class Members, assisted counsel in preparing for mediation and settlement discussions, attended the mediation, and reviewed and commented on the terms of the Settlement Agreement.  Wittels Decl. ¶¶ 35-36.

39.     Moreover, the service awards requested here for each Plaintiff are reasonable and well within the range awarded by courts ruling on similar matters.  *See, e.g.*, *Beckman*, 293 F.R.D. at 483 (approving service awards of $7,500 for eight plaintiffs and $5,000 for additional three plaintiffs following the pre-suit settlement of wage and hour class action); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF), 2013 WL 1209563, at *10 (S.D.N.Y. Mar. 21, 2013) (approving service awards of $15,000 and $13,000 to class representatives in wage and hour action); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998, at *8-9 (S.D.N.Y. Oct. 2, 2013) (approving service awards between $4,000 and $15,000 for class representatives in wage and hour action).

40.     In light of the foregoing, the Court finds that the proposed service awards are reasonable, and Plaintiffs' request for their approval is accordingly granted.

## AWARD OF ATTORNEYS' FEES AND LITIGATION EXPENSES

41.     For the reasons that follow, the Court grants Plaintiffs' request for attorneys' fees and costs and expenses and awards Class Counsel $143,500, which is less than one third of the total settlement amount. Such amount is inclusive of all attorneys' fees in addition to out-of-pocket litigation costs and expenses incurred by Class Counsel on behalf of the Plaintiffs or the Class.

42.     Elite shall pay Class Counsel's Attorneys' Fees in accordance with the terms of the Settlement Agreement. Elite shall have no other obligation to pay attorneys' fees or expenses or costs other than those awarded by the Court in this Order.

A. The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit.

43.     While "both the lodestar and the percentage of the fund methods are available to district judges," *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000), "[t]he trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one," *Beckman*, 293 F.R.D. at 477 (citing *McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). One reason for this trend is that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121 (quoting *In re Lloyd's American Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663588, at *25 (S.D.N.Y. Nov. 25, 2002)). Moreover, this method "preserves judicial resources because it 'relieves the court of the cumbersome, enervating, and often surrealistic

process of evaluating fee petitions.'" *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *15 (S.D.N.Y. Sept. 16, 2011) (quoting *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004)). Accordingly, the Court approves of the use of the percentage method in this case.

B. The *Goldberger* Factors Support Plaintiffs' Requested Fee Award.

44.     "[N]o matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee." *Goldberger*, 209 F.3d at 50. In determining the reasonableness of fee applications, courts consider the following six factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* (citing *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)). Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

**1. Class Counsel's Time and Labor**

45.     "Assessing the extent of time and labor expended effectively entails an estimate of Lead Counsel's lodestar," *In re Citigroup*, 2013 WL 3942951, at *16 (citing *Febus v. Guardian First Funding Grp., LLC,* 870 F. Supp. 2d 337, 339 (S.D.N.Y. 2012)), which is "based upon the number of hours reasonably expended by counsel on the litigation multiplied by a reasonable hourly rate," *Reiter v. MTA New York City Transit Auth.,* 457 F.3d 224, 232 (2d Cir. 2006) (citing *Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989)). This first *Goldberger* factor "is effectively the equivalent of using the lodestar calculation '[a]s a cross-check to a percentage award.'" *Febus*, 870 F. Supp. 2d at 339 (quoting *Wal-Mart Stores*, 396 F.3d at 123).

46. In this case, Class Counsel expended substantial hours and resources in achieving the $450,000 settlement. Before filing this action, Class Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Wittels Decl. ¶¶ 11-12. Class Counsel focused their investigation and legal research on underlying merits of Class Members' claims, the damages to which they alleged they were entitled, and the propriety of class certification. *Id.* Class Counsel conducted background research on Elite, obtaining information on Elite's intern hiring and retention practices, and the duties and responsibilities of Elite's interns. *Id.* Class Counsel also conducted interviews with Plaintiff and the Opt-In Plaintiffs concerning the training they received, their interactions with supervisors, their hours, their allegations of unreimbursed expenses, and other information pertinent to their claims in this action. *Id.* In addition, Class Counsel obtained and reviewed numerous documents and communications from Plaintiffs, and conducted research and investigation of the pertinent case law and the facts developed in other unpaid intern class actions. *Id.*

47. Class Counsel then filed the Complaint and additional Class Members came forward to participate in the suit or bring their own separate action. Wittels Decl. ¶ 14. In response to their requests, Class Counsel initiated an investigation of the terms and conditions of employment of the additional interns to verify that their experiences were similar to those of Plaintiff Davenport and that their work histories made them eligible to participate in a FLSA collective action. *Id.* Through this process, three additional former interns opted-in to the proposed FLSA collective action in advance of Plaintiffs moving for conditional certification. Dkt. Nos. 12, 13, 20.

48. On June 24, 2013, following the filing of the two amended complaints, and the filing of opt-in notices by three of the four former Elite interns who opted into this action,

Plaintiffs moved for conditional certification of a collective action under § 216(b) of the FLSA. Dkt. No. 23. In support of their motion for conditional certification, Plaintiffs submitted declarations from Plaintiff Davenport and Opt-In Plaintiffs Mosendz and Byun. Dkt. Nos. 27-1, 27-2, 27-3. While fully denying any liability, Elite made Rule 68 offers of judgment to each Plaintiff, which Plaintiffs rejected. Wittels Decl. ¶ 15.

49.     On June 28, 2013, Elite filed its Answer and Affirmative Defenses in Response to Plaintiff's Second Amended Class and Collective Action Complaint in which it denied liability on all of the claims, and on June 30, 2013, the Parties exchanged initial discovery demands. Dkt. No. 28. Shortly thereafter, the Parties agreed to attempt to resolve Plaintiffs' claims through mediation and engaged in confidential discovery in connection with the mediation, negotiations and subsequent motion practice relating to this settlement discussed *supra*. Wittels Decl. ¶ 16.

50.     In total, Class Counsel alone expended over 700 hours in attorney and staff member time. Wittels Decl. ¶ 48. These hours are reasonable for a complex case like the instant case. Moreover, Class Counsel is certain to spend additional time in the future aiding in the further administration of the settlement, and the requested fee award is also meant to compensate them for that time. *See Matheson*, 2011 WL 6268216, at *9 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.") (citations omitted).

51.     Based on Class Counsel's self-reported billing rates, which range from $450 to $870 per hour, the lodestar in this case amounts to $474,965—more than three times the requested $135,684.15 fee. *See* Wittels Decl. ¶¶ 48-51. These hourly rates are higher than usual. *Cf. Mireku v. Red Vision Systems, Inc.*, No. 11 Civ. 9671 (RA) (JLC), 2013 WL 6335978, at *2

(S.D.N.Y. Dec. 6, 2013) ("Courts in this district have determined that a fee ranging from $250 to $450 per hour is generally appropriate for experienced civil rights and employment law litigators.") (citing *Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *11 (S.D.N.Y. Aug. 2, 2012); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011); *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402 (RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010); *Chan v. Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *3-4 (S.D.N.Y. May 8, 2007)). *But cf. Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458 (GEL), 2009 WL 2482134, at *3 (S.D.N.Y. Aug. 13, 2009) (indicating that Outten & Goulden's "current hourly billing rates are $450-900 per hour for partners"). Nevertheless, the Court finds that the requested fee is appropriate, in light of the fact the fee requested amounts to 30.1% of the settlement, which is within the accepted range, and that Class Counsel will also be compensated for post-Fairness Hearing settlement administration out of this amount. *See Matheson*, 2011 WL 6268216, at *8-9.

### 2. Magnitude and Complexity of Litigation

52.     "The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Beckman*, 293 F.R.D. at 479 (citing *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996)). "Courts have recognized that wage and hour cases involve complex legal issues." *Tiro*, 2013 WL 4830949, at * 13 (citing *Johnson*, 2011 WL 4357376, at *16; *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981) ("FLSA claims typically involve complex mixed questions of fact and law.")). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an opt out class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA opt in collective action pursuant to 29 U.S.C. § 216(b)." *Johnson*, 2011 WL 4357376, at *17. The instant case, furthermore, hinges upon

24

several mixed and complex questions of fact and law. *See Tiro*, 2013 WL 4830949, at * 13

("The numerous and complex issues involved in this action support approval of Class Counsel's

attorneys' fee request"). Accordingly, the Court finds that the magnitude and complexity of the

litigation supports approval of the fee request.

### 3. Risks of Litigation

53. "Contingency risk is the principal, though not exclusive, factor courts should

consider in their determination of attorneys' fees." *Beckman*, 293 F.R.D. at 479 (quoting *In re*

*Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2001 WL 709262, at *6

(S.D.N.Y. June 22, 2001)); *see also Goldberger*, 209 F.3d at 54 (describing risk as "perhaps the

foremost" factor to be considered in determining whether to award an enhanced fee award)

(quoting *In re Orange Prod. Liability Litig.*, 818 F.2d 226, 236 (1987)). "No one expects a

lawyer whose compensation is contingent upon his success to charge, when successful, as little

as he would charge a client who in advance had agreed to pay for his services, regardless of

success." *In re Top Tankers Sec. Litig.*, No. 06 Civ. 13761 (CM) 2008 WL 2944620, at * 15

(S.D.N.Y. July 31, 2008) (quoting *Grinnell*, 495 F.2d at 470). However, "[r]isk falls along a

spectrum, and should be accounted for accordingly." *Goldberger*, 209 F.3d at 54.

54. Here, Class Counsel undertook to prosecute this action without any assurance of

payment for their services, litigating this case on a wholly contingent basis in the face of

significant risk. Moreover, in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011),

Class Counsel would face significant risk seeking class certification under Rule 23 due to the

potential difficulty of proving whether the Plaintiffs' internship duties were sufficiently similar.

Since *Dukes*, courts in this District have denied numerous Rule 23 motions in misclassification

cases. *See e.g.*, *Beckman*, 293 F.R.D. at 480 (collecting cases). Indeed, one court in this district

recently relied on *Dukes* to find that certification of a class of unpaid interns under Rule 23 was

inappropriate. *Wang*, 293 F.R.D. at 495-98, *motion to certify appeal granted*, No. 12 Civ. 793, 2013 WL 3326650. Thus, the risks of the litigation support Class Counsel's attorneys' fee request.

### 4. Quality of Representation

55.     "To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004)).

56.     As previously discussed, Elite has agreed to pay a total of $450,000 to settle this litigation, which after attorneys' fees and costs leaves up to a maximum of $1,751.61 available for each of the 155 Class Members, based on a ten-week internship. Regardless of the length of each Class Member's internship, each Class Member who timely submits a properly completed Claim Form is entitled to receive a minimum payment of $700.64. Wittels Decl. ¶ 24. This formula compensates Class Members by allowing them to obtain the minimum wage for approximately 24 hours for each week they reported that they interned at Elite. Wittels Decl. ¶ 24. Weighing these immediate benefits of the settlement against the risks associated with proceeding in the litigation, the amount obtained by Class Counsel is commendable.

57.     Further, the attorneys at Wittels Law are well versed in wage & hour law and have substantial experience representing employees in complex litigation. "Courts have viewed counsel's experience in wage and hour cases as directly responsible for a favorable settlement." *Beckman*, 293 F.R.D. at 481 (collecting cases). Class Counsel's experience weighs in favor of finding that the fee award is reasonable.

### 5. Reasonableness of Fee in Relation to Settlement

58.     Class Counsel's request for less than one-third of the fund is reasonable and "consistent with the norms of class litigation in this circuit." *McMahon v. Oliver Cheng Catering & Events LLC*, No. 97 Civ. 8713 (PGG), 2010 WL 2399328, at *9 (S.D.N.Y. March 3, 2010) (citations omitted).  Courts in this Circuit have routinely approved requests for one-third of the fund in cases with settlement funds substantially larger than the present action.  *See, e.g.*, *Beckman*, 293 F.R.D. at 481 (awarding one-third of $4.9 million fund in wage and hour action, and stating that "the requested fee award appears to be reasonable"); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF), 2013 WL 1209563, at *8 (S.D.N.Y. Mar. 21, 2013) ("Class Counsel's request for 33% of the Fund [$2,310,000] is reasonable and consistent with the norms of class litigation in this circuit.") (internal citation omitted).  In addition, the Second Circuit has ruled that "[a]n allocation of fees by percentage should . . . be awarded on the basis of total funds made available whether claimed or not."  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir.2007) (citing *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295 (11th Cir. 1999); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)).  The Court finds that the fee request is reasonable in relation to the amount of the settlement, and that this factor therefore supports approval as well.

### 6. Public Policy Considerations

59.     In ruling on a request for attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (citing *Alpine Pharmacy v. Chas. Pfizer & Co. Inc.*, 481 F.2d 1045, 1050 (2d Cir. 1973); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985)).  The FLSA and the NYLL are remedial statutes designed to protect

workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing that the objective of FLSA is to ensure every employee receives "a fair day's pay for a fair day's work"). Without adequate compensation for attorneys, "wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk." *Matheson*, 2011 WL 6268216, at *8 (citations omitted). Thus, "[a]dequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of those statutes." *Id.* (citations omitted). In this case, Class Counsel successfully negotiated a settlement that obtains significant monetary compensation for Class Members, which weighs in favor of granting the fee request.

## C. The Lodestar Cross-Check Further Supports the Requested Fee.

60.    "Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a 'baseline' or as a 'cross check.'" *Johnson*, 2011 WL 4357376, at *20 (citing *Goldberger*, 209 F.3d at 50). When used as a "cross check," courts are not required to "exhaustively scrutinize[]" the hours documented by Class Counsel; rather, they should consider the "reasonableness of the claimed lodestar" in light of "the court's familiarity with the case." *Goldberger*, 209 F.3d at 50 (citing *In re Prudential Ins. Co. American Sales Litig.*, 148 F.3d 283, 342 (3d Cir. 1998)); *see also In re Global Crossing*, 225 F.R.D. at 468 (using an "implied lodestar" for the lodestar cross check).

61.    Applying the lodestar method as a "cross check," the Court finds that the fee that Class Counsel seeks is reasonable. Class Counsel's request for an attorneys fee of 30.1% of the total settlement amount is less than Class Counsel's "lodestar" of $474,965. *See supra* ¶ 51. Given that "[c]ourts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers," Class Counsel's requested fee of $143,500 is modest and well within the range of reasonableness. *Beckman*, 293 F.R.D. at 481; *see also Yuzary*, 2013 WL

5492998, at *11 (characterizing lodestar multiplier of "approximately 7.6 times" to be "within the range granted by the courts").

   C. The Requested Expense Reimbursements are Reasonable.

62.   "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation of those clients.'" *Miltland Raleigh-Durham v. Myers,* 840 F. Supp. 235, 239 (S.D.N.Y. 1993) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir.1987)). The Court finds that the $7,815.85 in litigation expenses requested by Class Counsel are reasonable under this standard, and that Counsel is accordingly entitled to reimbursement in that amount from the common fund.

## FINAL SETTLEMENT PROCEDURE

63.   Following this grant of Plaintiffs' Motion for Final Approval, the Court will enter a Final Judgment. Because no class members filed any objection and/or opted out of the settlement, pursuant to § 25(a) of the Settlement Agreement, the "Effective Date" of the settlement shall be the first day following the date Judgment is entered approving the Settlement.

64.   The Parties are directed to consummate the Settlement Agreement in accordance with its terms.

65.   Not later than forty (40) days following the Effective Date, the Claims Administrator shall (a) mail to each Settlement Class Member a check in the amount calculated pursuant to the Settlement Agreement; and (b) issue to Class Counsel payment for Attorneys' Fees and Litigation Expenses, Claims Administration Costs, and Service Awards.

66.     The Court retains jurisdiction over this action as to all matters relating to the interpretation, administration, implementation and enforcement of the Settlement Agreement and this Order.

67.     The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.  The Release of Claims and covenant not to sue, contained in paragraphs 86-88 of the Settlement Agreement, are incorporated by reference herein.  The release shall be self-executing upon the Effective Date.

68.     The individual and class claims asserted in this litigation are hereby dismissed on the merits with prejudice as against Elite and the Released Parties and without costs and fees except for the Attorneys' Fees expressly provided for in the Settlement Agreement and as set forth in Paragraph 46 of this Order.   Any member of the NYLL Class who failed to timely and properly file a letter requesting exclusion from the NYLL Class as permitted by the Court, is hereby barred and permanently enjoined from asserting otherwise, and is subject to the terms and conditions of the Settlement, including the release and  covenant not to sue.

69.     Elite has timely filed notifications of this settlement with the appropriate state and federal officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. This Court has reviewed such notifications and accompanying materials, which are attached to the Wittels Declaration as Exhibit D, and finds that Elite's notifications comply fully with any applicable requirements of CAFA.

70.     The fact and terms of the Settlement Agreement, this Order, the Judgment, all negotiations, discussions, drafts and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

a. Shall not be offered or received against Elite or other Released Parties as evidence of, or be deemed to be evidence of, any presumption, concession or admission by Elite or other Released Parties with respect to the truth of any fact alleged by Plaintiff or the validity, or lack thereof, of any claim that has been or could have been asserted in this litigation or in any litigation, or the deficiency of any defense that has been or could have been asserted in this litigation or any litigation, or of any liability, negligence, fault or wrongdoing of Elite or other Released Parties;

b. Shall not be offered or received against Elite or any of the Released Parties as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Released Party; and

c. Shall not be offered or received against Elite or any of the Released Parties as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to the Settlement Agreement, in any arbitration proceeding or other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Settlement Agreement.

71. The Court hereby approves Wittels Law, P.C. as Class Counsel for purposes of the settlement. The Court hereby approves Plaintiff Dajia Davenport, Opt-In Plaintiffs Annie Byun, Stacey Robinson, Polina Mosendz, and Elizabeth Defeo as Class Representatives.

72.     Should the Effective Date not occur as set forth in the Settlement Agreement and herein, or if the Settlement is terminated for any reason whatsoever, this Order shall be null and void and of no further force and effect, and the Parties shall be restored to their respective positions prior to the execution of the Settlement Agreement.  Upon such nullification, neither this Order nor the Settlement Agreement shall be used or referred to for any purpose in this action or in any other proceeding, the Settlement Agreement and all negotiations relating thereto shall be inadmissible, and all Orders issued in furtherance of or pursuant to this Settlement shall be vacated.

It is so ORDERED this ____ day of _____, 2014.

_____
Honorable Alison J. Nathan
United States District Judge